IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

THOR GENSINGER,

    Plaintiff,

vs.                                                                                   Case No. 4:12cv243-MCR/CAS

THREE UNKNOWN FRANKLIN
CORRECTIONAL INSTITUTION
CORRECTIONAL OFFICERS, et al.,

    Defendants.

                                              /

## REPORT AND RECOMMENDATION

Defendant Chowdhury[1] filed a "third motion for sanctions" and seeks dismissal of this case because Plaintiff refused to answer any substantive questions during his deposition in this civil rights action. Doc. 63 at 2. Plaintiff was provided an opportunity to respond to the motion, doc. 64, and he has filed a response. Doc. 69.

Plaintiff has been sanctioned twice previously for failure to attend two properly noticed depositions. Docs. 32, 47, and 54. Defendant Chowdhury filed an "unopposed motion for sanctions pursuant to Rule 27" on March 15, 2013, doc. 30. The motion advised that Plaintiff had been properly noticed for his deposition on March 12, 2013, at

---

[1] Only Defendant Chowdhury was served with process. An Order entered on January 14, 2013, advised Plaintiff he must use discovery to determine the whereabouts of Defendant Dr. James Shepperd and to determine the identity of the three unknown correctional officer Defendants. Doc. 28.

1:00 p.m., in Tallahassee, but Plaintiff telephoned opposing counsel approximately a half hour before the deposition was to start to advise that he could not attend. Because Plaintiff did not give timely notice and the court reporter had already arrived for the scheduled deposition, Plaintiff was sanctioned and assessed $44.10. Doc. 32.[2]

Thereafter, the deposition was rescheduled for April 15, 2013, and notice given to Plaintiff. Doc. 33. Plaintiff once again failed to attend the deposition and never contacted opposing counsel to advise that he could not attend due to a recent arrest and detention. *Id.* Defendant's motion to dismiss the case due to Plaintiff's second failure to attend the deposition was denied, but Plaintiff was sanctioned with an additional cost of $66.10. Doc. 47, 54. After providing Plaintiff with another opportunity to continue this litigation, Plaintiff was "cautioned that further failures to complete discovery, including not submitting for his third scheduled deposition, may result in the dismissal of this action." Doc. 47 at 7.

Plaintiff's deposition was scheduled for the third time for September 20, 2013. Doc. 63; *see* Ex. A. Counsel traveled to Clearwater, Florida, to take the deposition as Plaintiff was still held in detention. *Id.* at 2. Plaintiff refused to answer any substantive questions in the deposition. *Id.*; *see* Ex. C (doc. 63-3). After answering basic questions such as his name, address, and location of the deposition, Plaintiff asked whether he had to answer the questions or whether he could "just go ahead and invoke [his] Fifth Amendment" privilege. Doc. 63-3 at 3-5. Counsel explained to Plaintiff that he could

---

[2] Plaintiff was required to submit $44.10 to opposing counsel on or before May 17, 2013. Doc. 32. Plaintiff has not made that payment or the $66.10 additional sanction imposed, doc. 54. *See* doc. 63 at 2.

object to a question, but he still had to answer the question. *Id.* at 5. The following discussion then took place:

> A. So, I have to answer the questions?
>
> Q. Yes, sir.
>
> A. What if I don't answer the questions?
>
> Q. If you don't want to answer questions I can end the deposition and we can seek the intervention of the Court.
>
> As you know, you've already been sanctioned twice for depositions, and I'll - - basically what I'll end up doing is file a Motion for Sanctions seeking the Court's intervention, and then they'll basically decide what to do with the case further.
>
> As you know, I've traveled from Tallahassee for this deposition, so I would appreciate it if you would cooperate with me and answer my questions. But, you have every right not to do that if you want to.
>
> A. Yeah. I don't want to cooperate.
>
> Q. You're not going to answer any questions today?
>
> A. No.
>
> Q. Okay. You realize that this is your case that you brought, and without - -
>
> A. It's all in the reports. It's all in the reports. It's all in your files. Everything. That's the whole case. The complaint, you saw that.
>
> Q. So, if it's all there and all truthful why don't you want to answer questions today?
>
> A. I just don't feel like answering no questions.
>
> Q. All right. So, if you're not going to answer any questions what I'm going to go ahead and do is - - I'm going to let you know, I will be filing a Motion for Sanctions.
>
> A. You're filing everything else, man, so do what you got to do, partner. That's all you do is file.

Case No. 4:12cv243-MCR/CAS

> Q. I'm an attorney, that's what I'm supposed to do.
>
> Okay. If you're not going to answer any questions then what I'm going to do is I'm going to go ahead and conclude the deposition at this point. As you stated, you don't want to answer any questions, you don't want to cooperate with the deposition; the third attempt at your deposition, and we'll see what the Court says.
>
> A. I'd rather save my questions for the Judge and jury.

Doc. 63, Ex. C at 5-7 (doc. 63-3). Because Plaintiff failed to cooperate in the deposition, Defendant seeks dismissal with prejudice of this case and argues it is appropriate, although severe, because lesser sanctions have not been effective in gaining Plaintiff's compliance in discovery. Doc. 63 at 4-5.

In response to the motion, Plaintiff acknowledges that he "did envoke [sic] his Fifth Amendment rights during the deposition . . . ." Doc. 69. Plaintiff contends that the reason he did so "is that Defendant's attorney refused to cooperate with discovery process and mail Plaintiff copies of requested documents." *Id.* Plaintiff contends he "needed these documents" to "refresh his memory to actual names, places and dates pertaining to this case . . . ." *Id.* Plaintiff contends that opposing counsel was "using some sort of trickery and Plaintiff's lack of knowledge of the law to get him to do as he wants." *Id.* at 2. Plaintiff asserts that he has the right to invoke the Fifth Amendment "until he is provided with discovery documents." *Id.* Plaintiff advises that after he "has had time to refresh his memory to the facts of the case he has no problems complying with a deposition and answering any and all questions asked" by opposing counsel. *Id.*

Pursuant to Rule 37(b), a party may be sanctioned for failing "to obey an order to provide or permit discovery" and the Court may enter a number of different orders to address the problem, including:

(i) direct "that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;"

(ii) prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;"

(iii) strike "pleadings in whole or in part;"

(iv) stay "further proceedings until the order is obeyed;"

(v) dismiss "the action or proceeding in whole or in part;"

(vi) render "a default judgment against the disobedient party; or"

(vii) treat "as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

FED. R. CIV. P. 37(b)(2)(A).

A district court has broad discretion in imposing sanctions pursuant to Rule 37. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1048-49 (11th Cir. 1994). Moreover, where the severest sanction of dismissal is imposed, there must be a finding of bad faith or wilfulness. Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993), *cert. denied* 114 S.Ct. 181 (1993). When contemplating dismissal for flagrant or willful discovery violations, the court must consider "whether a less drastic but equally effective remedy could have been fashioned." Aztec Steel Co. v. Florida Steel Corp., 691 F.2d 480, 481-82 (11th Cir. 1982). "The sanction of dismissal is an extreme remedy and should not be imposed if lesser sanctions will suffice." Hashemi v. Campaigner Publications, Inc., 737 F.2d 1538, 1538-39 (11th Cir. 1984), *quoted in* Navarro v. Cohen, 856 F.2d 141, 142 (11th Cir. 1988).

The discovery period in this case began on January 14, 2013, and was originally scheduled to conclude by April 15, 2013. Doc. 28. After Plaintiff failed to attend his first scheduled deposition, discovery was re-opened and extended until August 23, 2013. Doc. 47. Discovery was extended a second time due to Plaintiff's failure to attend the second deposition, *see* docs. 56 and 57, and ended on September 23, 2013. Plaintiff has had nine months in which to obtain any needed discovery from Defendant Chowdhury. During this time, no motion to compel discovery was ever filed by Plaintiff and there has been no showing made that Plaintiff was properly seeking discovery from the Defendant but encountered problems doing so. It is noted, however, that Plaintiff filed a document on September 6, 2013, in which Plaintiff stated that he seeks "disclosure of the identity of the (3) three correctional officers on duty at Franklin Correctional Institution 'A' Dorm Quad 1, administrative confinement, on May 16th 2008, the day of Plaintiff's injury." Doc. 58 at 2. Plaintiff also requested a "copy of all medical related documents and reports related to Plaintiff's instant case" and copies of "all requests, informal grievances and formal grievances relating to the instant case . . ." *Id.* at 3. That filing does not show due diligence during the discovery period, nor does it demonstrate that Plaintiff had been seeking discovery from the Defendant and had served a request for production of documents pursuant to Rule 34. It is not appropriate to request discovery by filing the request with the Court, as the Rules of this Court clearly provide. N.D. Fla. Loc. R. 26.2(A). Even if the request for production was proper, and it was not, the request was not made in time to comply with the September 23rd discovery deadline.

Most importantly to the issue of sanctions, Plaintiff's assertion in response to the motion for sanctions and dismissal that he did not answer questions in the deposition because he needed copies of documents to refresh his memory is disingenuous. The transcript of the attempted deposition reveals no such assertion and Plaintiff made no statement suggesting he had not been provided discovery.

Plaintiff has demonstrated a pattern in this case of hindering discovery and, in particular, the taking of his deposition. Twice before Plaintiff failed to attend the deposition, and in light of the court orders and sanctions already entered, Plaintiff was on notice that "further failures to complete discovery, including not submitting for his third scheduled deposition, may result in the dismissal of this action." Doc. 47 at 7. In the face of a clear warning, Plaintiff again did not submit for his deposition, which must be more than showing up, and he acted in bad faith by refusing to answer questions.

Plaintiff's assertion of a Fifth Amendment privilege is improper in this civil litigation which he initiated, and is an inexcusable hindrance to the discovery process. "The Fifth Amendment declares in part that 'No person * * * shall be compelled in any Criminal Case to be a witness against himself'." Hoffman v. United States, 341 U.S. 479, 485-86, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The Supreme Court set forth general principles regarding the invocation of the Fifth Amendment privilege against self-incrimination in Hoffman which are worthy of repetition:

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. (citation omitted) But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. *Mason v. United States*, 1917, 244 U.S. 362, 365, 37 S.Ct. 621, 622, 61 L.Ed. 1198, and cases cited. The witness is not

>  exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers v. United States*, 1951, 340 U.S. 367, 71 S.Ct. 438, and to require him to answer if 'it clearly appears to the court that he is mistaken.' (citation omitted). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

Hoffman v. United States, 341 U.S. at 486-87, 71 S.Ct. at 818. The Fifth Amendment privilege is applicable when a deponent has "reasonable cause to apprehend danger" from answering a question and a deponent "may not establish the privilege by his bald assertion of the privilege." United States v. Goodwin, 625 F.2d 693, 700 (5th Cir. 1980). There must be a "good faith belief" that the testimony would incriminate the witness. *Id.*; *see also* F.T.C. v. First Universal Lending, LLC, No. 09-82322, 2011 WL 666149, at *5 (S.D. Fla. Feb. 12, 2011) (noting that a refusal to answer even "benign questions provides a strong indication that" the witness "simply did not want to answer any questions at all."). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (citations omitted). As noted by United States Magistrate Judge Robin Rosenbaum, a case has not been found "that stands for the proposition that fear of a perjury charge resulting solely from the inconsistency between prior truthful testimony and yet-ungiven future testimony provides a sufficient basis for invoking the Fifth Amendment privilege." F.T.C., 2011 WL 666149, at *5, n.2.

To determine whether assertion of the privilege was valid,[3] the claims of this case have been reviewed. Plaintiff's § 1983 complaint alleged that while a prisoner at Franklin Correctional Institution, he "slipped and fell exiting a shower" and did not receive timely medical treatment or pain medication for Plaintiff's broken arm. Doc. 1. Plaintiff's Eighth Amendment claims against prison officials in this case bear no relation to possible criminal prosecution. Plaintiff has not shown any credible reason why answering questions concerning the events and issues about his slip and fall, injury, and subsequent medical treatment would pose some real and not imaginary threat of incrimination. Particularly noteworthy is the fact that Plaintiff was asked whether there was any reason that Plaintiff could not "answer questions today fully and truthfully" and Plaintiff responded, "Not no reasons, no." Doc. 63, Ex. C at 4-5 (doc. 63-3).

While Defendant's counsel did not proceed to ask each question desired in the deposition and Plaintiff did not assert the privilege to each question, Plaintiff asserted a general refusal to answer any questions and counsel ended the deposition. Plaintiff raised no fear about possible criminal prosecution and no threats were made in the deposition about perjury. Counsel issued only the general admonition that Plaintiff was

---

[3] Even in a civil case, a deponent has the right to claim his or her Fifth Amendment privilege and refuse to answer questions. State of R.I. v. Carillon, 592 F.Supp. 655, 658 (D.R.I. 1984), cited in Harris v. Johns, No. 3:06cv433, 2007 WL 2433900, at *2 (M.D. Fla. Aug. 22, 2007). Furthermore, a deponent cannot preserve a Fifth Amendment privilege by objecting and then answering a question. De Lisi v. Crosby, 402 F.3d 1294, 1301 (11th Cir. 2005), citing United States v. White, 846 F.2d 678, 690 (11th Cir. 1988) (noting the "settled principle" that "[a] witness who testifies at any proceeding, instead of asserting his Fifth Amendment rights, loses the privilege."). "A civil deponent cannot choose to answer questions with the expectation of later asserting the Fifth Amendment." White, 846 F.2d at 690. Thus, if Plaintiff had a valid basis for asserting the privilege, it was proper to assert the privilege without answering, and counsel's advice that Plaintiff could object to a question but he would "still have to answer it" was incorrect. Doc. 63-3 at 5.

sworn to provide truthful testimony and if he was "found by a court to have stated any untruthful statements during" the deposition he "could face perjury charges."  Doc. 63-3 at 4.  Plaintiff did not have a reasonable basis to refuse to answer questions and assert the privilege.  Counsel reminded Plaintiff he had already been sanctioned twice, that counsel had traveled from Tallahassee to depose Plaintiff, and he would appreciate Plaintiff's cooperation.  *Id.* at 5-6.  Plaintiff refused and said, "I just don't feel like answering no questions."  *Id.*  That refusal has no basis in the Fifth Amendment.

As lesser sanctions and warnings have not been able to gain compliance, and because monetary sanctions have no impact on Plaintiff who uses indigency as a shield, the Court is left with no other option than to grant the motion to dismiss.  Plaintiff has unnecessarily increased the cost of this litigation, and his refusal to participate in discovery prevents the Defendant from adequately preparing a defense.  The remedy is to dismiss this case.

In addition to dismissal, Defendant seeks monetary sanctions and requests that Plaintiff be made to "pay the reasonable costs and fees associated with the third attempt at taking his deposition . . . ."  Doc. 63 at 6.  The Court is doubtful that such a sanction will be paid since Plaintiff has not paid the previously assessed sanctions.  Nevertheless, the following costs are reasonable, required by Plaintiff's conduct, and should be imposed against Plaintiff due to his willful failure to submit to his deposition.  Counsel spent $117.00 for the hotel and parking, $61.28 for car rental, $59.75 for gasoline, $77.17 for the court reporter, and $57.12 for the transcript.  The motion for monetary sanctions should be granted in part and Plaintiff assessed $372.32 pursuant to Rule 37.

Finally, this case has been proceeding since May 2012, yet service has never been carried out as to Defendant James Sheppard. Plaintiff still does not know the whereabouts of Defendant Shepherd. Doc. 68. Moreover, Plaintiff has never advised the Court that he used discovery to obtain the identities of the three John Doe correctional officer Defendants. *Id.* It has not been demonstrated on this record that Plaintiff has made diligent efforts to prosecute this case against those Defendants. Thus, in light of the recommendation made to dismiss this case against Defendant Chowdhury, the case should also be dismissed for Plaintiff's failure to prosecute his claims against all other Defendants.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to dismiss this case as a third sanction for Plaintiff's hindrance of the discovery process, doc. 63, be **GRANTED**; that the motion to impose the reasonable costs associated with the third attempt to take Plaintiff's deposition, doc. 63, be **GRANTED** and pursuant to Rule 37, Plaintiff be assessed reasonable costs of $372.32; and this case be **DISMISSED** for Plaintiff's failure to prosecute his claims against the remaining Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on October 30, 2013.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**